IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON | ) | No. 33171-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| MAHADI H. ALJAFFAR, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Being a court interpreter involves more than the ability to speak two languages. Court interpretation is a specialized skill, requiring not only language proficiency, but also the ability to relay information between court participants so non-English speakers are placed on substantially equal footing with their English speaking counterparts. Washington law recognizes the importance of high quality court interpretation. Under the court interpreter statute, when a non-English speaker is involved in a proceeding, the court must appoint a certified interpreter unless good cause justifies the appointment of an interpreter who is qualified, but not certified.

During Mahadi Aljaffar's felony trial, the requirements of Washington's court interpreter statute were not met. Despite being advised of the need for an Arabic interpreter, the trial court did not appoint a certified interpreter. Nor did the court make a good cause finding prior to utilizing the services of an uncertified interpreter. Although arranging for a certified Arabic interpreter would have required coordinating with an interpreter residing across the state, this was not the kind of circumstance that justified appointment of an uncertified interpreter.

While the interpreter statute was violated in this case, reversal is not automatic. To obtain relief, Mr. Aljaffar must establish prejudice. He has not done so. Mr. Aljaffar's convictions are therefore affirmed.

## BACKGROUND

Mahadi Aljaffar is a Saudi Arabian national living in the United States on a student visa. His primary language is Arabic. He was charged in Spokane County Superior Court with several felony sex offenses arising from incidents involving two separate women inside a nightclub bathroom. On the morning of Mr. Aljaffar's trial, the State alerted the court it had been unable to obtain the assistance of a certified Arabic interpreter. According to the State, Washington has only one certified Arabic interpreter and that individual resides in the Seattle area. The State claimed this circumstance made

2

arranging for the assistance of a certified interpreter logistically difficult. Rather than proceed with a certified interpreter, the State proposed proceeding to trial with an interpreter named Imad Beirouty. Mr. Aljaffar objected.

In response to the State's request, the court conducted a colloquy with Mr. Beirouty regarding his qualifications. Mr. Beirouty stated Arabic is his native language and he had been speaking English as a second language for over 30 years. For over three years, he had been qualified by various Spokane trial courts to interpret for defendants, though had never before served at a trial. Mr. Beirouty told the court he communicated with Mr. Aljaffar "very well" and that Mr. Aljaffar was indicating he understood Mr. Beirouty. 1 Verbatim Report of Proceedings (VRP) (Dec. 1, 2014) at 11. Mr. Beirouty stated he understood his role as an impartial interpreter and he "took a vote [sic] of ethics." *Id.* at 12.

After permitting the parties to question Mr. Beirouty, the Court concluded:

> I think based upon my conversation with this gentleman I believe he is sufficiently qualified to be an interpreter in this matter. He is willing to undertake the role. He has done it in the past in the legal setting. And he understands that he is a neutral party and he — as he indicated, he understands his role and he has no relation to the defendant outside of this process.
> I think he is sufficiently qualified to interpret in this case. Having said that, I just need to administer the oath. Then I think once we do that, we're okay; we can proceed.

*Id.* at 14. The court then administered the interpreter oath. The court never made any findings with respect to whether the State had established good cause to proceed without a certified interpreter.

At trial, Mr. Aljaffar testified in his own defense. He denied assaulting the two female victims, explaining that he is not interested in women because he is gay. He testified he believed the bar where the assault took place was a gay bar and he did not realize the bathroom in question was a women's bathroom.

During his testimony, Mr. Beirouty frequently utilized a third person narrative in recounting Mr. Aljaffar's testimony. For example, when Mr. Aljaffar's attorney asked why he mistakenly chose to use the women's bathroom, the interpreter stated, "He saw two bathroom. There is one bathroom with more privacy than the other one." 2 VRP (Dec. 3, 2014) at 152. When asked what he did when Mr. Aljaffar entered the bathroom, Mr. Beirouty stated, "He, because there was some people leaning on the wall, he was waiting until he can use the bathroom." *Id.* On cross-examination, the prosecutor asked Mr. Aljaffar whether he was the only male that entered the women's bathroom. Mr. Beirouty responded, "He observed two—two men dressing like women go into the bathroom." *Id.* at 166.

4

At other times during Mr. Aljaffar's testimony, Mr. Beirouty provided commentary on what Mr. Aljaffar was saying, rather than interpretation. For example, at one point during cross-examination, the prosecutor stated he didn't hear Mr. Aljaffar's testimony. Mr. Beirouty responded, "He's thinking of saying more stuff." *Id.* at 168. Later in cross examination, Mr. Beirouty interjected that Mr. Aljaffar was "confusing the men's bathroom from the ladies' bathroom," so he was "going to explain to [Mr. Aljaffar] what you mean." *Id.* at 171.

At the close of trial, a jury found Mr. Aljaffar guilty of two counts of indecent liberties by forcible compulsion and one count of unlawful imprisonment with a sexual motivation. Mr. Aljaffar filed a timely appeal. The arguments on appeal focus solely on the adequacy of the court appointed interpreter. Mr. Aljaffar argues that the interpreter was not appointed pursuant to state law, which typically requires a certified interpreter, and that the interpreter's lack of competence deprived Mr. Aljaffar of his constitutional right to confront witnesses and participate in his trial.

Finding plausible merit to Mr. Aljaffar's statutory claim, but unable to resolve the question of prejudice on the existing record, we ordered a reference hearing under RAP 9.11(a). We also posed the following to the trial court for determination by written findings of fact:

1. Were there any detectable discrepancies between the Arabic testimony presented at trial and the translation provided to the court? If so, explain.

2. Would the use of a certified Arabic interpreter have made a difference in the outcome of Mr. Aljaffar's trial?

Order for Reference Hearing, No. 33171-7-III, at 1 (Wash. Ct. App. Oct. 11, 2016). Our Order further directed the trial court to enlist the assistance of a certified Arabic interpreter in answering the court's questions, and that the certified interpreter be provided an audio recording of Mr. Aljaffar's trial testimony if available. In addition to eliciting testimony from the certified interpreter at the reference hearing, the parties were invited to address "any other factual issues related to" the questions posed by the court. *Id.* at 2.

A reference hearing was conducted in superior court on December 8, 2016. At the hearing, the court heard testimony from Diana Noman, a certified Arabic interpreter. Ms. Noman had prepared an annotated transcript of Mr. Aljaffar's trial testimony based on an audio recording supplied by the court. Although portions of the recording were difficult to decipher, Ms. Noman was able to identify numerous problems with Mr. Beirouty's interpretation. In summary, she found: (1) 44 instances where Mr. Beirouty summarized Mr. Aljaffar's testimony using a third person narrative, as opposed to a first person direct interpretation, (2) 11 instances where Mr. Beirouty provided commentary rather than

6

strict interpretation, (3) 24 discrepancies between the English spoken at trial and the Arabic interpretation, and (4) 3 instances where no interpretation was provided at all.

The State also elicited testimony from Mr. Beirouty. Prior to his testimony, Mr. Beirouty reviewed the recording of Mr. Aljaffar's trial testimony, although he found it difficult to hear. He did not review Ms. Noman's annotated transcript. Mr. Beirouty testified that there had not been any communication problems between Mr. Aljaffar and himself and his interpretation was accurate. On cross-examination, Mr. Beirouty admitted he does not know the meaning of the third person or what it means to interpret in the third person.

After considering Ms. Noman's annotated transcript, the testimony of the two witnesses, and argument by counsel, the trial court entered written findings of fact and conclusions of law. In its findings, the court observed that the quality of the audio recording utilized by Ms. Noman was fairly poor, making it sometimes difficult to decipher the exact nature of the testimony. In addition, Mr. Aljaffar speaks and understands English to some extent. Despite these difficulties, the Court found there were numerous detectable discrepancies between the Arabic testimony of Mr. Aljaffar and the translation presented at trial.

7

Having found problems with Mr. Beirouty's interpretation, the trial court moved to the question of whether the use of a certified Arabic interpreter would have made a difference in the outcome of Mr. Aljaffar's trial. The court observed, "This question might be difficult to be answered by anyone other than this Court, having in mind the knowledge of the totality of the evidence as well as the evidence received at the hearing of December 8th." Finding of Fact 2, at 3. Taking into account what happened at trial, the trial court found Mr. Aljaffar was not prejudiced by Mr. Beirouty's flawed interpretation. While there were numerous discrepancies, they did not alter the content of Mr. Aljaffar's message to the jury or his proffered defense. The trial court did not condone the errors committed by Mr. Beirouty. However, the court concluded, "To suggest that, for example, the use of the 'third person' by the interpreter would change the result of the trial ignores the weight of the evidence." *Id.* at 4.

After receiving the trial court's findings and conclusions, along with the reference hearing transcript and exhibit, this court resumed consideration of Mr. Aljaffar's appeal. At issue is whether the trial court's use of Mr. Beirouty as an interpreter violated Mr. Aljaffar's statutory and constitutional rights.

## ANALYSIS

Non-English speakers involved in court proceedings are entitled to the assistance

8

of a court-appointed interpreter. This right is guaranteed both by Washington statute and the United States Constitution. *State v. Gonzales-Morales*, 138 Wn.2d 374, 378-79, 979 P.2d 826 (1999). With respect to the Constitution, a criminal defendant's right to confront witnesses and participate in court proceedings encompasses a non-English speaker's right to competent interpretation services. *Id.* There is no constitutional right to a *certified* court interpreter. *State v. Tuoc Ba Pham*, 75 Wn. App. 626, 633, 879 P.2d 321 (1994). That right is conferred by statute. Absent a finding of good cause, Washington courts are required to appoint an interpreter who is certified by the administrative office of the courts to assist non-English speakers. RCW 2.43.030.

*Standard of review*

The legal standards governing our review of Mr. Aljaffar's appeal turn on the nature of the errors claimed and whether those errors were preserved at trial. In examining the record in this regard, we look at Mr. Aljaffar's statutory and constitutional claims separately. An error preserved on the basis of a statutory violation does not automatically preserve a similar constitutional claim.

During trial, Mr. Aljaffar only voiced one objection to the use of Mr. Beirouty as an interpreter. In response to the State's request for use of an uncertified interpreter on the morning of trial, defense counsel stated as follows:

9

I would rather have my client have this matter interpreted by a court-certified interpreter. There is a lot of very detailed information that I don't know whether or not it can be communicated from English to Arabic successfully.

So that is why I'm—I'm objecting to not having a court-certified interpreter here. I understand the rules. And I understand it's Your Honor's responsibility to make a decision as to whether or not the interpreter in the courtroom is qualified for such a complex trial with so many issues and witnesses. I'm deferring to the Court, but stating my objection for the record.

1 VRP (Dec. 1, 2014) at 6.

Defense counsel's objection made clear he disagreed with the State's proposed use of an uncertified interpreter. In doing so, counsel referenced the applicable "rules." This objection is similar to the one deemed sufficient to preserve a statutory objection in *Tuoc Ba Pham*, 75 Wn. App. at 632. We likewise find the objection sufficient to preserve Mr. Aljaffar's statutory claims here. Mr. Aljaffar's objection notified the trial court of his disagreement with the decision to proceed with an uncertified interpreter under the "rules." This was sufficient to alert the trial court of its statutory obligations and therefore preserve Mr. Aljaffar's statutory arguments for appeal.

Because Mr. Aljaffar has preserved his statutory objection, we will review the trial judge's decision to appoint an uncertified interpreter for abuse of discretion. *See Gonzalez-Morales*, 138 Wn.2d at 381. Although this is a deferential standard, it is still meaningful. A trial court abuses its discretion when a decision is based on a

10

misapplication of the applicable law. *See State v. Lord*, 161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007).

While Mr. Aljaffar adequately informed the trial court of his statutory concerns, he never alerted the court to any constitutional issues. Prior to this appeal, neither Mr. Aljaffar nor his attorney ever indicated there had been any misunderstandings with the interpreter or a breakdown in communication. Because the trial court was never asked to address any constitutional concerns, it was never provided the opportunity to remedy problems with Mr. Beirouty's services prior to the jury's verdict. Under these circumstances, Mr. Aljaffar's constitutional claims have not been preserved and our review is limited to RAP 2.5(a)(3), which requires Mr. Aljaffar to establish a manifest constitutional error.

*The statutory right to a certified interpreter*

Prior to appointing Mr. Beirouty as Mr. Aljaffar's interpreter, the trial court conducted a colloquy on the record. While the court asked questions regarding Mr. Beirouty's qualifications, no inquiry was made with respect to why the State had not secured the services of a certified interpreter. Nor were there any findings in this regard. Defense counsel proffered that the court had previously ordered a court-certified interpreter at a readiness hearing and that the State had access to a certified interpreter

11

from Seattle who was "otherwise available." 1 VRP (Dec. 1, 2014) at 5-6. However, defense counsel explained the interpreter would need to be flown to Spokane and would require housing during trial. The State did not disagree with this proffer. Instead, the prosecutor volunteered that securing the presence of a certified interpreter would have been logistically difficult and that, in addition, the interpreter would not have been available at the start of the trial, which was set for December 1, 2014.

The trial court's decision to permit Mr. Beirouty to serve as an interpreter violated RCW 2.43.030(b), which requires a finding of good cause. By statute,

> "good cause" includes but is not limited to a determination that:
> (i) Given the totality of the circumstances, including the nature of the proceeding and the potential penalty or consequences involved, the services of a certified interpreter are not reasonably available to the appointing authority; or
> (ii) The current list of certified interpreters maintained by the administrative office of the courts does not include an interpreter certified in the language spoken by the non-English speaking person.

RCW 2.43.030(b)(i), (ii).

The circumstances here did not amount to good cause. Mr. Aljaffar was charged with serious felony offenses. Not only did he face substantial prison time, his immigration status made him vulnerable to deportation. Given the nature of Mr. Aljaffar's legal proceedings, the State was obliged to make a substantial, good faith effort to obtain the services of a certified interpreter. There is no record this took place.

12

Spokane County had access to a certified Arabic interpreter. The fact the interpreter lived a few hours away and could not be made available on short notice did not provide the State good cause to excuse retaining a certified interpreter. The State as plaintiff is expected to anticipate the needs of its case and make necessary arrangements before the day of trial. *See, e.g., City of Kent v. Sandhu*, 159 Wn. App. 836, 841, 247 P.3d 454 (2011); *State v. Chichester*, 141 Wn. App. 446, 170 P.3d 583 (2007). While we recognize the statutory definition of good cause permits some flexibility, the circumstances here clearly do not constitute good cause.

Having determined good cause did not justify the use of an uncertified interpreter, we turn to the question of remedy. The failure to make a good cause finding is a statutory violation, not one of constitutional magnitude. Accordingly, the stringent "harmless error beyond a reasonable doubt" standard is inapplicable. *State v. Cunningham*, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980). Instead, we apply "the rule that error is not prejudicial unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected." *Id*.

The question of whether the use of a certified interpreter would have made a difference in Mr. Aljaffar's case is a difficult one for us to assess. The errors apparent from the official transcript pertain to the manner of Mr. Beirouty's interpretation. Mr.

13

Beirouty frequently used the third person to describe Mr. Aljaffar's testimony, rather than the first person interpretation expected of an interpreter. This practice could have detracted from the jury's ability to assess Mr. Aljaffar's credibility. Credibility was important in this case, as the success of Mr. Aljaffar's proffered defense turned on the jury's belief of his testimony. Because the record on appeal did not permit our evaluation of this kind of prejudice, we remanded the matter to the trial court for a reference hearing under RAP 9.11.

At the reference hearing, the trial court evaluated Mr. Beirouty's interpretation services with the help of a certified Arabic interpreter and an audio recording of Mr. Aljaffar's trial testimony. Although portions of the recording were inaudible, the trial court was largely able to compare the testimony provided to the jury by Mr. Beirouty with what would have been relayed had Mr. Aljaffar received the services of a certified interpreter. The court considered this information in the context of the rest of the trial and found Mr. Aljaffar had not been prejudiced by the use of an uncertified interpreter. Mr. Aljaffar was able to relay his version of the incident to the jury. The trial court's findings are entitled to deference and we accept them on appeal.

Mr. Aljaffar complains the information elicited at the reference hearing was incomplete and therefore insufficient to assess the issue of prejudice. He notes the trial

14

court and the certified interpreter only reviewed Mr. Beirouty's interpretation of Mr. Aljaffar's testimony to the jury; no assessment was made of Mr. Beirouty's interpretation of the remainder of the trial proceedings to Mr. Aljaffar. These arguments are unpersuasive. Throughout this appeal, the only complaints lodged against Mr. Beirouty pertained to the interpretation of Mr. Aljaffar's trial testimony. At the reference hearing, the parties were invited to address *any* factual issues related to the question of whether the use of a certified Arabic interpreter would have made a difference at Mr. Aljaffar's trial. Despite having the assistance of counsel and a certified interpreter, Mr. Aljaffar did not present any evidence at the reference hearing and did not challenge Mr. Beirouty's testimony that he and Mr. Aljaffar had no problems communicating. Given these circumstances, Mr. Aljaffar's argument that inadequacies existed outside of his trial testimony lacks factual support.

The trial court's findings support the conclusion that the trial court's failure to comply with the certification requirements of RCW 2.43.030 was not prejudicial. Reversal on this basis is unwarranted.

*Manifest constitutional error*

Because the record does not reflect Mr. Aljaffar was prejudiced by the use of an uncertified interpreter, he cannot, by definition establish a manifest constitutional error.

15

The manifest error standard requires the substance of a constitutional error be readily identifiable at the time of trial, based on the record before the court. *State v. O'Hara*, 167 Wn.2d 91, 99-100, 217 P.3d 756 (2009). This is the "actual prejudice" prong of the manifest error test. It requires an appellant to make a "plausible showing . . . that the asserted error had practical and identifiable consequences in the trial of the case." *Id.* (internal quotation marks omitted) (quoting *State v. Kirkman*, 159 Wn.2d 918, 155 P.3d 125 (2007)). If the appellant cannot establish actual prejudice arising from an alleged constitutional error, our manifest error review ends and we do not consider whether the error was harmless. *O'Hara*, 167 Wn.2d at 99-100.

The only errors regarding the substance of Mr. Beirouty's services that could have been apparent to the court at the time of trial were the various uses of third person testimony and other commentary. As determined during the reference hearing, such inadequacies did not have any practical impact on Mr. Aljaffar's case. Given this circumstance, Mr. Aljaffar has not shown that any constitutional errors arising from his interpreter were "manifest." *See, e.g., People v. Rivera*, 72 Ill.App.3d 1027, 1039, 390 N.E.2d 1259 (1979) (no constitutional error established by vague claims regarding inadequacy of interpretation coupled with the interpreter's use of third person testimony). Accordingly, no further review of Mr. Aljaffar's constitutional claims is warranted under

16

No. 33171-7-III
*State v. Aljaffar*

RAP 2.5(a)(3).

## CONCLUSION

The failure to enlist the services of a certified interpreter without good cause was a serious violation. Given the fact that Mr. Aljaffar testified and placed his credibility before the jury, inadequate interpretation could have impacted the jury's verdict. Nevertheless, after careful review of the record, we are satisfied Mr. Aljaffar was not prejudiced by the use of an uncertified interpreter. The judgment of conviction is affirmed.

_____
Pennell, J.

WE CONCUR:

_____    _____
Lawrence-Berrey, A.C.J.             Siddoway, J.

17