# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50421-9-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| BINIAM YIRGALEM GEBREMARIEM, | |
| Appellant. | |

MAXA, C.J. – Biniam Gebremariem appeals his conviction for manufacturing marijuana. Before trial, Gebremariem waived his right to counsel and waived his right to a jury. He was not provided with an interpreter at trial even though English is not his primary language.

We hold that (1) Gebremariem's waiver of counsel was invalid because the trial court failed to adequately inform him of the disadvantages of self-representation and the maximum penalty of the charge against him, (2) the trial court abused its discretion in failing to determine whether Gebremariem required an interpreter, and (3) Gebremariem's jury waiver will not be binding on remand. However, we hold that the State presented sufficient evidence to support Gebremariem's conviction.[1]

Accordingly, we reverse Gebremariem's conviction and remand for further proceedings.

---

[1] Gebremariem also argues that the trial court improperly imposed discretionary legal financial obligations (LFOs) and a violation of the Uniform Controlled Substances Act (VUCSA) fine without assessing Gebremariem's ability to pay. Because we reverse Gebremariem's conviction, we vacate the imposition of LFOs and VUCSA fine.

FACTS

*Marijuana Grow and Arrest*

On October 25, 2016, law enforcement officer Jeffrey Godbey accompanied a county utility worker to shut off power to a residence in Centralia. When he arrived, Godbey knocked on the front door and Gebremariem answered. Godbey could smell a strong odor of marijuana and through the open door he saw marijuana plants hanging from a string stretching across the front of the house and into the back.

Godbey asked if Gebremariem lived at the house, and Gebremariem replied that he had arrived a week earlier to do work on the property and would be there for approximately two months. Gebremariem stated that he did not know anything about the plants hanging in the house, and that Godbey would need to talk to another person. Gebremariem invited Godbey inside the house while he retrieved the person's number from a cell phone. Godbey followed Gebremariem to a bedroom. Godbey noticed another room that had live marijuana plants growing. Aside from a bed in the bedroom, the house had no furnishings to indicate that someone was living there.

Pursuant to a warrant, officers subsequently searched the main residence as well as a greenhouse and a detached shop building on the property. Inside the house there appeared to be an elaborate marijuana grow operation in one of the back bedrooms and in the garage. The house's windows were covered, and there were grow lights and a venting system. The garage contained several growing plants and lighting, electrical, and venting systems. The rest of the house was used to hang marijuana plants.

The officers accessed the shop building with a key on Gebremariem's key ring. The shop contained a similar setup, as well as a garbage sack full of processed marijuana. In total, there were over 300 marijuana plants at the property.

One of the responding officers, Mathew Schlecht, was with the joint narcotics enforcement team. He testified that based on his observations, the house was primarily used for growing marijuana. The house's only livable area was the one bedroom. In that bedroom, the officers found a credit card issued in Gebremariem's name. There did not appear to be anyone else living at the residence at that time. The officers did not identify any legal authorization to grow marijuana at the house. The State subsequently charged Gebremariem with manufacturing marijuana.

*Waiver of Defense Counsel*

Gebremariem underwent a competency evaluation, which determined him to be competent. At a hearing to review the evaluation, Gebremariem informed the court that he did not need an attorney and that he wanted to represent himself. The trial court and Gebremariem engaged in a brief colloquy:

> THE COURT: All right. So since you're representing yourself, want to represent yourself, *I want to make sure that you understand that there are some real disadvantages to representing yourself because you have to understand the rules of evidence, on how to present a case, how to present evidence.* Are you familiar with any of those things?
>
> MR. GEBREMARIEM: I'm familiar. If not, I will request some -- I will just -- yeah, I'll request some other person to just help me with finding the process. But I'm confident to defend myself.

Report of Proceedings (RP) (Nov. 17, 2016) at 7 (emphasis added). The court did not engage in any further discussion about the disadvantages or dangers of self-representation.

The trial court stated that it also could appoint defense counsel as standby counsel, which Gebremariem declined, stating that he could find somebody else by himself. The court then granted Gebremariem's request to represent himself:

> THE COURT: All right. I will allow you to proceed with that for right now. And I'm not going to appoint [defense counsel] as standby counsel based on your statement that you are going to hire an attorney to stand by with you. All right?

3

MR. GEBREMARIEM:  Yeah.

THE COURT:  And that's what you want to do?

MR. GEBREMARIEM:  Yeah.

RP (Nov. 17, 2016) at 9.

At a subsequent pretrial hearing, the trial court again discussed representation with

Gebremariem:

THE COURT:  Mr. Gebremariem, I know that you've been advised in the past about your constitutional right to have an attorney represent you.  I would strongly urge you to do that.  If you can't afford an attorney, one will be appointed for you.

MR. GEBREMARIEM:  I have the right to choose my own attorney?

THE COURT:  If you would like to hire an attorney, you would have to choose one.  If you want an attorney appointed, then I will appoint an attorney.

MR. GEBREMARIEM:  I mean, I would like to have one, but I would like to know what kind of lawyer I'm using with this building.  So I will just go get one attorney which is licensed, the one that I know.

THE COURT: Okay.  So you want to go hire an attorney?  Otherwise, I can appoint a very good attorney for you today.  You can meet with that attorney and talk to them about any motions you want to file.  If you don't feel that that attorney is doing what you are asking of them or defending your case properly, then you can go hire an attorney if you like.

MR. GEBREMARIEM:  I'm okay.  But if I need one maybe, at which time I might, yeah, I might get one.  But for now --

THE COURT:  For now you don't want an attorney?

MR. GEBREMARIEM:  Yeah.

RP (Jan. 19, 2017) at 5-6.  The record does not show that the trial court ever discussed with

Gebremariem the maximum penalty he faced upon conviction or that he was otherwise aware of

this information.

4

Gebremariem represented himself through the remainder of the proceedings and did so without standby counsel.

*Interpreter Issues*

At his competency review hearing, Gebremariem requested an interpreter. He stated that he was originally from Eritrea, and that his native language was Tigrinya. The trial court stated that an interpreter would be available for his next hearing, but Gebremariem participated in the remainder of the review hearing without one.

Gebremariem's competency evaluation recommended that he receive an interpreter. The evaluation provided some additional relevant background. Although Gebremariem's primary language was Tigrinya, he began learning English in Eritrea in the second grade, with most of his classes after that taught in English. He came to the United States in 2010 and completed one year of school at a community college.

At a subsequent pretrial hearing, the trial court provided an interpreter by telephone. The court allowed Gebremariem to ask the interpreter a list of questions regarding the interpreter's qualifications and certification documents. Gebremariem voiced repeated concerns that he could not understand the interpreter and that the interpretation was not accurate, but the court did not address his concerns.

> THE DEFENDANT: He's not interpreting it perfectly accurately. He's not.
>
> THE COURT: Well, this is the interpreter we're using. If you wish to provide your own interpreter, you can do that at your cost.

RP (Dec. 22, 2016) at 8.

When Gebremariem continued to question the interpreter, the trial court said, "Stop right now or you're going to be visiting our jail." RP (Dec. 22, 2016) at 9. The interpreter abruptly

ended the phone call. The court then warned Gebremariem about his questioning of the interpreter:

> THE COURT: I'm going to give you one more chance to follow this procedure, and if you don't, I'll have no choice but to find you in contempt. This is exactly what happened in front of Judge Lawler the last time you were in court. You don't have a right to challenge the interpreter for not being good enough for you.
>
> So if you want to visit the jail, start talking again. If you would prefer not to visit the jail, we're going to do this procedure. We'll hang up and we'll do this procedure without the interpreter. And pretty soon we're going to get into a contempt situation.
>
> THE DEFENDANT: But I have the right to ask the interpreter.
>
> THE COURT: No you don't.

RP (Dec. 22, 2016) at 12.

The trial court contacted a second interpreter, with whom Gebremariem also had concerns about improper interpretation. The second interpreter also ended the call.

Gebremariem requested a new interpreter, but the trial court refused to provide one. The court instructed the prosecutor to read the proposed omnibus order to Gebremariem. Gebremariem stated that he did not understand what was being read and again asked for an interpreter. The hearing ended with the court holding Gebremariem in contempt for continuing to state that he did not understand without an interpreter.

> THE COURT: I'm going to give you one more chance. He's reading it to you. If you don't want to sign it, don't. We'll terminate this hearing.
>
> THE DEFENDANT: I don't understand anything. How could I sign –
>
> THE COURT: All right.
>
> THE DEFENDANT: -- without understanding.
>
> THE COURT: Well, I'm finding you in contempt, and you're going to go to jail right now.

6

RP (Dec. 22, 2016) at 17-18. Even though Gebremariem was not in custody at the time, he was taken into custody at the court's direction.

The remaining court proceedings, including trial, were held without an interpreter. Gebremariem did not again request an interpreter or object to proceeding without an interpreter.

*Waiver of Jury Trial*

Gebremariem filed a pretrial motion requesting trial by the court. At a hearing the following day, Gebremariem again asserted that he wanted a judge to hear his case, and the trial court engaged him in a brief colloquy. Gebremariem demonstrated some confusion:

> THE COURT: So you understand you have a constitutional right to have your case heard by a jury of twelve Lewis County citizens? You understand that, right?
>
> MR. GEBREMARIEM: I don't understand. I understand you're the judge –

RP (Feb. 9, 2017) at 21.

On the first day of trial, the trial court again discussed the jury waiver issue with Gebremariem. The court informed Gebremariem that there were some advantages to a jury, primarily that the State would have to convince 12 people of his guilt rather than just the judge. The court asked again whether Gebremariem was comfortable with proceeding with a bench trial. Gebremariem confirmed that he was comfortable. He also signed a written jury waiver.

*Conviction*

After a bench trial, the trial court entered findings of fact and conclusions of law finding Gebremariem guilty of manufacturing marijuana. Gebremariem appeals his conviction.

ANALYSIS

A.     WAIVER OF RIGHT TO COUNSEL

Gebremariem argues that his decision to waive his right to counsel and represent himself was not knowing and intelligent. We agree.

1.  Legal Principles

Article I, section 22 of the Washington Constitution and the Sixth Amendment to the United States Constitution guarantee a criminal defendant the right to assistance of counsel. A criminal defendant also has a right to self-representation under the same provisions. *State v. Madsen*, 168 Wn.2d 496, 503, 229 P.3d 714 (2010). The right of self-representation is "so fundamental that it is afforded despite its potentially detrimental impact on both the defendant and the administration of justice." *Id.*

However, a tension exists between the rights of self-representation and to counsel. *State v. Howard*, 1 Wn. App. 2d 420, 424, 405 P.3d 1039 (2017). By requesting to represent himself, a defendant waives his right to counsel. *Id.* at 425. But criminal defendants do not have an absolute right to self-representation. *Id.* A trial court may allow a defendant to represent himself only if the defendant waives his right to counsel voluntarily, knowingly, and intelligently. *Id.* "*If counsel is properly waived*, a criminal defendant has a right to self-representation." *City of Bellevue v. Acrey*, 103 Wn.2d 203, 209, 691 P.2d 957 (1984) (emphasis added).

The preferred method for determining whether waiver is valid is through a colloquy on the record between the trial court and the defendant. *Howard*, 1 Wn. App. 2d at 425. "[T]he trial court should assume responsibility for assuring that decisions regarding self-representation are made with at least a minimal knowledge of what the task entails." *Acrey*, 103 Wn.2d at 210. The trial court must inform the defendant of the dangers and disadvantages of self-representation to ensure that the defendant " 'knows what he is doing and his choice is made with eyes open.' " *In re Pers. Restraint of Rhome*, 172 Wn.2d 654, 659, 260 P.3d 874 (2011) (quoting *Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)).

The trial court must indulge every reasonable presumption against waiver of the right to counsel. *Madsen*, 168 Wn.2d at 504. The trial court may deny a request for self-representation if the request is "made without a general understanding of the consequences." *Id.* at 505.

For the trial court's colloquy to be sufficient, this court has strictly adhered to certain requirements:

> "Th[e] colloquy, *at a minimum*, should consist of informing the defendant of the nature and classification of the charge, the maximum penalty upon conviction and that technical rules exist which will bind defendant in the presentation of his case."

*Howard*, 1 Wn. App. 2d at 426 (quoting *Acrey*, 103 Wn.2d at 211). If the trial court does not address those issues in its colloquy, the record must otherwise show that the defendant was properly informed. *Howard*, 1 Wn. App. 2d at 428.

The maximum sentence for the charged crime is a particularly important consideration for self-representation.

> The maximum penalty for the charged crime is essential information that a defendant needs in deciding whether to represent himself or herself. A defendant may be willing to represent himself or herself when facing a lesser penalty but not when facing a greater penalty. Therefore, if a defendant does not know the maximum penalty for the charged crime, we cannot say that the defendant is making the decision to represent himself or herself knowingly.

*Id.* at 429. As a result, "a waiver of the right to counsel is invalid if the trial court does not inform the defendant of the maximum penalty for the charged crime and the defendant is not otherwise aware of the maximum penalty." *Id.*

We review for abuse of discretion a trial court's decision on whether a defendant's waiver of the right to counsel is voluntary, knowing, and intelligent. *Rhome*, 172 Wn.2d at 667. A trial court abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds, or applies an erroneous view of the law. *Id.* at 668. It is the defendant's

burden to show that the waiver of the right to counsel was not knowing and intelligent. *Howard*, 1 Wn. App. 2d at 426.

Because the right to counsel is so fundamental, a trial court's erroneous finding that the defendant validly waived the right to counsel can never be treated as harmless error. *Id.*

2.    Waiver Analysis

The record here fails to establish that Gebremariem's waiver was knowing and intelligent.  First, the trial court failed to adequately inform Gebremariem of the disadvantages of representing himself.  The trial court has an obligation to discuss with the defendant the "dangers and disadvantages of self-representation" to ensure that the defendant makes an informed decision. *Rhome*, 172 Wn.2d at 659.  The court also must inform the defendant that he or she will be bound by technical rules. *Acrey*, 103 Wn.2d at 211.

In its colloquy with Gebremariem, the trial court made only one brief statement about the disadvantages of self-representation: "I want to make sure that you understand that there are some real disadvantages to representing yourself because you have to understand the rules of evidence, on how to present a case, how to present evidence." RP (Nov. 17, 2016) at 7.  Other than the vague reference to the evidence rules, the court did not tell Gebremariem that he would be bound by technical rules.  In a subsequent hearing, the court urged Gebremariem to have an attorney represent him but did not explain why.

The trial court's discussion of disadvantages and technical rules was minimal to nonexistent.  The court made no real effort to explain what self-representation involved or to make sure that Gebremariem understood the dangers of representing himself.

Second, the trial court did not adequately address Gebremariem's problems understanding English.  Gebremariem's competency evaluation recommended that he receive an interpreter.  Moreover, Gebremariem repeatedly stated that without an interpreter, he did not

10

understand what was being said.  He also demonstrated confusion at the beginning of the colloquy regarding self-representation.

> THE COURT: . . . Mr. Gebremariem, do you want to represent yourself on this case?
>
> MR. GEBREMARIEM:  Yeah.  I'm present, sir.
>
> THE COURT:  I understand –
>
> MR. GEBREMARIEM:  Yes, sir.
>
> THE COURT:  – but saying you're present doesn't answer my question.  Do you want to represent yourself?
>
> MR. GEBREMARIEM:  I'm here, yeah.  I'm present, sir, yeah.  I present, yeah.
>
> THE COURT:  This is – you're still not answering my question.  So you told me that you do not want Mr. Arcuri to represent you; is that right?
>
> MR. GEBREMARIEM:  I don't – yeah, I don't want him.  I don't – I don't need attorney.

RP (Nov. 17, 2016) at 4-5.  Despite Gebremariem's apparent difficulty understanding English, the trial court made no real effort to determine whether he understood the consequences of self-representation.

Third, the trial court did not inform Gebremariem of the maximum penalty for manufacturing marijuana and nothing in the record shows that Gebremariem was otherwise aware of the maximum penalty for the charge.[2]  Although Gebremariem does not raise this argument, under *Howard* the failure to inform him of his maximum sentence rendered his waiver of his right to counsel invalid.  1 Wn. App. 2d at 429.

---

[2] The only discussion of penalties in the record was reflected in Gebremariem's competency evaluation.  Gebremariem stated that he did not know the specific charges "but had the general understanding they had something to do with marijuana."  Clerk's Papers (CP) at 17.  Regarding his potential sentence, he stated "up to $5,000" and some incarceration.  CP at 17.

Accordingly, we hold that the record does not establish that Gebremariem's wavier of his right to counsel was knowing and intelligent and therefore we hold that the waiver was not valid.

B.    RIGHT TO AN INTERPRETER

Gebremariem argues that the trial court erred in denying him an interpreter. Even though we are reversing Gebremariem's conviction on other grounds, we address this issue to provide guidance on remand. We agree with Gebremariem that the trial court abused its discretion in failing to determine whether he required an interpreter.

1.    Right to Interpreter

A defendant has both a constitutional and statutory right to an interpreter if he or she needs one. *State v. Aljaffar*, 198 Wn. App. 75, 82-83, 392 P.3d 1070, *review denied*, 188 Wn.2d 1021 (2017). The right to a competent interpreter is included in the defendant's right to confront witnesses and participate in court proceedings under the Sixth Amendment. *Id.* at 83. The Fifth Amendment due process clause also provides a right to an interpreter. *Mendoza v. United States*, 755 F.3d 821, 827 (7th Cir. 2014). The right to a *certified* interpreter is conferred by statute. *Aljaffar*, 198 Wn. App. at 83.

RCW 2.43.030(1)(c) states, "Except as otherwise provided in this section, when a non-English-speaking person is involved in a legal proceeding, the appointing authority *shall* appoint a qualified interpreter." (Emphasis added.) A "non-English-speaking person" is "any person involved in a legal proceeding who cannot readily speak or understand the English language." RCW 2.43.020(4). If a person is entitled to an interpreter, the trial court must appoint a "certified or a qualified interpreter to assist the person throughout the proceedings." RCW 2.43.030(1).

When the trial court is put on notice that the defendant may have a significant language difficulty, the court must identify whether an interpreter is needed. *State v. Woo Won Choi*, 55

Wn. App. 895, 901, 781 P.2d 505 (1989). The trial court should make it unmistakably clear to the defendant that he or she has the right to a court-appointed interpreter "*if the court determines that one is needed*." *Id.* at 902. If the defendant's English is adequate to understand the trial proceedings and present a defense, there is no right to an interpreter. *Id.*

Because the appointment of an interpreter is a matter within the trial court's discretion, the trial court's decision will be disturbed only after a showing that the court abused its discretion. *State v. Gonzales-Morales*, 138 Wn.2d 374, 381, 979 P.2d 826 (1999). A trial court abuses its discretion when it fails to exercise discretion, including when it fails to make a necessary decision. *See State v. Stearman*, 187 Wn. App. 257, 265, 348 P.3d 394 (2015).

2. Qualified Interpreter

A court must use an interpreter that has been certified by the administrative office of the courts unless good cause exists to use an uncertified interpreter. RCW 2.43.030(1)(b). In that case, the court must appoint a "qualified" interpreter. RCW 2.43.030(1)(a). If good cause exists to use an uncertified interpreter, RCW 2.43.030(2) provides that the trial court shall make a preliminary determination that the proposed interpreter is able to interpret accurately all communications. The trial court must satisfy itself on the record that the interpreter:

> (a) Is capable of communicating effectively with the court or agency and the person for whom the interpreter would interpret; and

> (b) Has read, understands, and will abide by the code of ethics for language interpreters established by court rules.

RCW 2.43.030(2). The failure to comply with this requirement constitutes error. *In re Dependency of J.E.D.A.*, 2 Wn. App. 2d 764, 767, 413 P.3d 574 (2018).

When addressing an interpreter's competence, the relevant standard is "whether the rights of non-English speakers are protected, rather than whether the interpreting is or is not egregiously poor." *State v. Teshome*, 122 Wn. App. 705, 712, 94 P.3d 1004 (2004).

3. Interpreter Analysis

Here, the trial court was on notice that Gebremariem *potentially* needed an interpreter. First, Gebremariem's competency evaluation concluded that he had problems understanding court proceedings because of a language barrier and recommended that he be provided with an interpreter. Second, Gebremariem himself stated that he needed the proceedings to be translated. Third, the trial court actually provided an interpreter in preliminary hearings.

As a result, the trial court was required to exercise its discretion in identifying whether an interpreter was in fact necessary. *Woo Won Choi*, 55 Wn. App. at 901. But the record does not include any discussion of Gebremariem's need for an interpreter and the trial court did not make any related findings. Instead, it appears that the trial court summarily refused to allow Gebremariem access to an interpreter in order to punish him for questioning the competency of the interpreters that initially were provided. And when Gebremariem continued to press the issue, the court found him in contempt and placed him in custody.[3]

Accordingly, we hold that the trial court abused its discretion in failing to determine whether Gebremariem required an interpreter. On remand, the trial court must make this determination and must provide him with an interpreter under RCW 2.43.030 if he meets the definition of a "non-English-speaking person."

C. JURY TRIAL WAIVER

Gebremariem argues that his waiver of his right to a jury trial was not knowing, intelligent, and voluntary. We need not address this issue because Gebremariem's previous jury trial waiver will not be binding on remand. *See Wilson v. Horsley*, 137 Wn.2d 500, 508-11, 974

---

[3] Gebremariem does not appeal the trial court's contempt finding, so we do not address whether the court erred in holding him in contempt.

14

P.2d 316 (1999); *Spring v. Dep't of Labor & Indus.*, 39 Wn. App. 751, 754-56, 695 P.2d 612

(1985); *cf. State v. Bange*, 170 Wn. App. 843, 845-49, 285 P.3d 933 (2012).

D.      SUFFICIENCY OF EVIDENCE

Gebremariem argues that the State failed to present sufficient evidence to support his

conviction for manufacturing marijuana.[4]  We disagree.

1.      Legal Principles

To resolve whether sufficient evidence supports a conviction, we view the evidence in the

light most favorable to the State and determine whether any rational finder of fact could find the

crime's elements beyond a reasonable doubt.  *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d

182 (2014).  After a bench trial, we review a trial court's ruling to determine whether substantial

evidence supports the trial court's finding of fact and whether the findings of fact support the

conclusions of law.  *Id.* at 105-06.  We treat findings of fact supported by substantial evidence

and unchallenged findings of fact as verities on appeal.  *Id.* at 106.

When challenging the sufficiency of the State's evidence, the defendant admits the truth

of the evidence and all reasonable inferences that can be drawn from it.  *Id.*  These inferences

must be drawn in the State's favor and against the defendant.  *Id.*  We defer to the fact finder on

issues of conflicting testimony and evaluating the evidence's persuasiveness.  *Id.*  Circumstantial

and direct evidence are equally reliable.  *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143

(2014).

2.      Analysis

Gebremariem was convicted of manufacturing marijuana under RCW 69.50.401(1),

which provides that "it is unlawful for any person to manufacture, deliver, or possess with intent

---

[4] Even though we are reversing Gebremariem's conviction, we address this argument because a
finding of insufficient evidence would result in a dismissal of the charge.

to manufacture or deliver, a controlled substance." The statute defines manufacture as "the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly or by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container." Former RCW 69.50.101(u) (2015).

Here, the State presented testimony that Gebremariem was the only person present at a residence that had a substantial marijuana grow operation. Officers collected over 300 marijuana plants from the property, multiple parts of the property contained elaborate lighting and venting systems, the main residence and detached shop had a large amount of marijuana hanging to dry, and the shop had a garbage sack full of processed marijuana. The residence did not contain furnishings that would indicate someone would be living there, and had only a single bed in a room where Gebremariem kept his cell phone and where officers found a credit card issued in Gebremariem's name.

The State presented substantial evidence that Gebremariem was growing marijuana. The residence was set up for the sole purpose of growing marijuana, Gebremariem told the officers that he had been there for a week and was planning on staying for an additional two months, and he was the only person present. It is reasonable to infer that Gebremariem was present at the house to assist in the substantial growing operation, which involved the production, preparation, and propagation of marijuana.

The trial court entered written findings of fact consistent with this evidence, which findings are unchallenged and therefore are verities on appeal. *Homan*, 181 Wn.2d at 106. These findings are sufficient to support the trial court's conclusions of law, specifically that

Gebremariem manufactured marijuana. Accordingly, we hold that the State presented sufficient evidence to support Gebremariem's conviction of manufacturing marijuana.

CONCLUSION

We reverse Gebremariem's conviction and remand for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, C.J.

We concur:

_____
WORSWICK, J.

_____
LEE, J.