IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77800-5-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| BRYANT JIETA, | ) | |
| | ) | FILED: February 10, 2020 |
| Respondent. | ) | |

VERELLEN, J. — This case presents the narrow question of first impression whether CrRLJ 8.3(b) allows for dismissal of criminal charges due to mismanagement by court administration. The State contends the court system is not "governmental" within the scope of the "governmental misconduct" portion of the rule. Because the plain language of the rule extends to "governmental" mismanagement and court administration is governmental in nature, CrRLJ 8.3(b) applies.

Under the circumstances here, we need not define the types of conduct or degree of mismanagement by court administration required to support relief under CrRLJ 8.3(b).

The trial court did not err in applying CrRLJ 8.3(b) to dismiss Jieta's charges due to court mismanagement.

Therefore, we affirm.

FACTS[1]

Bryant Jieta was first arraigned on charges of fourth degree assault and third degree malicious mischief in Snohomish County District Court on May 19, 2015. The court continued the arraignment after ordering that Jieta be provided a Marshallese interpreter. Over the next 15 months, the court held 14 more pretrial hearings, and the interpreter repeatedly failed to appear telephonically or personally. On August 26, 2016, Jieta moved under CrRLJ 8.3(b) to dismiss all charges. On September 12,—another hearing where the interpreter failed to appear—the court dismissed all charges with prejudice and found the interpreter's absences "seriously interfered with Mr. Jieta's right to representation by counsel."[2] Of 14 pretrial hearings conducted after the court directed the appointment of a interpreter, the interpreter failed to appear 10 times, appeared by phone— ineffectively—two times, and appeared in person two times. The superior court affirmed the dismissal on the State's RALJ appeal.

The State sought discretionary review in this court, which was granted on the narrow question whether CrRLJ 8.3(b) can apply when court administration mismanages a case.

---

[1] All facts are from the district court's findings except where otherwise noted. The findings are uncontested and are verities on appeal. State v. Coleman, 6 Wn. App. 2d 507, 516, 431 P.3d 514 (2018), review denied, 193 Wn.2d 1005 (2019).

[2] Report of Proceedings (Sept. 12, 2016) at 22.

ANALYSIS

Generally, we review a decision to dismiss under CrRLJ 8.3(b)[3] for abuse of discretion.[4] But the narrow question here is limited to whether "governmental misconduct" under CrRLJ 8.3(b) can extend to mismanagement by court administration. We review interpretation of a court rule de novo.[5]

We interpret court rules the same way we interpret statutes, looking to the rule's plain language to determine its meaning.[6] We determine a rule's plain meaning by considering its text, surrounding context, related provisions, and the regulatory scheme as a whole.[7] A rule's plain meaning governs our interpretation unless it is ambiguous.[8] If the rule is subject to only one reasonable interpretation, then it is unambiguous and "our inquiry ends" because no further interpretation is necessary.[9]

CrRLJ 8.3(b) gives courts discretion to dismiss "any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice

---

[3] CrRLJ 8.3(b) and CrR 8.3(b) use identical language, so case law from one can be used to interpret the other. See City of Seattle v. Holifield, 170 Wn.2d 230, 238, 240 P.3d 1162 (2010) (analyzing CrRLJ 8.3(b) using cases considering CrR 8.3(b)).

[4] State v. Salgado-Mendoza, 189 Wn.2d 420, 427, 403 P.3d 45 (2017).

[5] Holifield, 170 Wn.2d at 236.

[6] Id. at 237.

[7] State v. Basra, 10 Wn. App. 2d 279, 285, 448 P.3d 107 (2019), review denied, 455 P.3d 133 (2020).

[8] State v. Davis, 3 Wn. App. 2d 763, 788, 418 P.3d 199 (2018).

[9] Holifield, 170 Wn.2d at 237.

to the rights of the accused which materially affect the accused's right to a fair trial." To satisfy the rule, the alleged misconduct "'need not be of an evil or dishonest nature; simple mismanagement is sufficient.'"[10]

The judiciary has a statutory duty of appointing an interpreter "to assist the [defendant] throughout the proceedings."[11] Reliable interpreter services are necessary to secure a non-English speaking defendant's fair trial rights.[12] Thus, to assist a defendant "throughout the proceedings," the interpreter must actually deliver translation services throughout the proceedings.

The State does not dispute that the court mismanaged its obligation to provide Jieta a reliable interpreter.[13] And the State does not dispute that Jieta was prejudiced by the interpreter's many absences and failings.[14] The only remaining question is whether court administration is "governmental" for purposes of the rule.

---

[10] State v. Wilson, 149 Wn.2d 1, 9, 65 P.3d 657 (2003) (quoting State v. Michielli, 132 Wn.2d 229, 239, 937 P.2d 587 (1997)).

[11] RCW 2.43.030.

[12] State v. Aljaffar, 198 Wn. App. 75, 83, 392 P.3d 1070 (2017); see RCW 2.43.010 ("It is hereby declared to be the policy of this state to secure the rights, constitutional or otherwise, of persons who, because of a non-English-speaking cultural background, are unable to readily understand or communicate in the English language, and who consequently cannot be fully protected in legal proceedings unless qualified interpreters are available to assist them.").

[13] See App. Br. at 1 (framing the issue as whether "a court can dismiss a case based on the court's own mismanagement").

[14] See id. (not assigning error to the conclusion that Jieta was prejudiced); Clerk's Papers at 83 (conceding on appeal to the superior court that "the lack of an interpreter deprived [Jieta] of those rights [to counsel and to understand the proceedings against him].").

The term "governmental" is not defined in Washington's rules of criminal procedure, so we can use a dictionary.[15] An institution is "governmental" when it is "of or relating to government or the government of a particular political unit."[16] Courts are a foundational part of Washington's government at all levels.[17] Under the plain meaning of the rule's text, courts are governmental.

The rule's purpose supports this textual interpretation. The purpose of CrR 8.3(b) is to ensure fairness to defendants by protecting their right to a fair trial.[18] Thus, when mismanagement by court personnel prevents a defendant from receiving reliable interpreter services and effective assistance of counsel for more than one year, the defendant has a viable claim of "governmental misconduct" consistent with the text and purpose of CrRLJ 8.3(b).[19]

---

[15] See Basra, 10 Wn. App. 2d at 285 (using a dictionary for undefined terms in CrR 8.3(b)).

[16] WEBSTER'S THIRD NEW INT'L DICTIONARY 983 (2002).

[17] See Const. art. IV, § 1, et. seq.; State v. Jones, 6 Wash. 452, 461-62, 34 P. 201 (1893) (explaining the "respective duties" of the "several departments" of Washington State's government, including the "judicial department").

[18] CrRLJ 8.3(b); see City of Kent v. Sandhu, 159 Wn. App. 836, 841, 247 P.3d 454 (2011) (citing State v. Chichester, 141 Wn. App. 446, 457, 170 P.3d 583 (2007) (explaining dismissal can be appropriate where the proceedings were unfair to the defendant and prejudiced his right to a fair trial).

[19] On this narrow appeal and limited briefing, we do not purport to articulate precisely what constitutes administrative mismanagement of interpreter services. Our determination merely acknowledges that repeatedly assigning the same ineffective and unreliable interpreter for 15 hearings over more than a year without attempting to hire another interpreter presents a viable claim of court administrative mismanagement for purposes of CrRLJ 8.3(b).

The State asserts the word "governmental" as used in CrRLJ 8.3(b) is ambiguous and the history of the rule is inconsistent with any application to court administrative mismanagement. But under our rules of statutory interpretation, we consider legislative history only after determining a statutory term is ambiguous.[20] Because the plain meaning of CrRLJ 8.3(b) is unambiguous, it is not necessary to interpret CrRLJ 8.3(b) based on its history.[21]

The few cases to touch on this question are of limited assistance and are not controlling. The State argues City of Seattle v. Knutson already decided this issue.[22] But the holding of Knutson is that a defendant seeking dismissal under CrRLJ 8.3(b) must demonstrate prejudice. It did not address the issue here. Knutson involved the failure of a municipal court to comply with an interlocal agreement to provide jurors, prosecutors and/or court clerks for proceedings in district court. This court reversed the district court's dismissal under CrRLJ 8.3(b) because the district court did not find prejudice, and the defendant did not argue prejudice resulted from the asserted mismanagement.[23] The Knutson court did not cite authority or apply the rules of statutory interpretation to conclude a

---

[20] See State, Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wn.2d 1, 12, 43 P.3d 4 (2002) (explaining that interpreting a statute based on legislative history is appropriate only after determining it is ambiguous).

[21] Holifield, 170 Wn.2d at 237.

[22] 62 Wn. App. 31, 813 P.2d 124 (1991).

[23] Id. at 33-34.

municipal court's administrative failures could not constitute governmental misconduct for purposes of CrRLJ 8.3(b).[24]

Jieta relies on State v. Irby, but Irby's analysis is not directly applicable here.[25] In Irby, the court considered whether dismissal was justified under CrR 8.3(b) when county jail guards actively infringed on the defendant's right to counsel by reading his legal correspondence.[26] The court did not consider whether the jail guards' misconduct was "governmental" because the parties agreed the guards were state actors.[27]

Jieta also relies on State v. Moore.[28] Moore involved a judge's failure to provide notice of the loss of firearm rights to a convicted felon, as required by former RCW 9.41.047(1)(a). The Moore court stated that "the court's failure constituted governmental mismanagement under CrR 8.3(b)."[29] But the opinion does not include any analysis about the scope of CrR 8.3(b). Moore relied on State v. Leavitt for its conclusion, but Leavitt does not address CrR 8.3(b) at all.[30] Leavitt considered whether a felon's due process rights were violated when he was convicted of unlawful possession of a firearm after the original sentencing

---

[24] Id. at 34.

[25] 3 Wn. App. 2d 247, 415 P.3d 611 (2018).

[26] Id. at 251.

[27] Id. at 253.

[28] 121 Wn. App. 889, 91 P.3d 136 (2004).

[29] Id. at 895.

[30] 107 Wn. App. 361, 371, 27 P.3d 622 (2001).

court failed to provide notice of his loss of firearm rights.[31] Moore appears to support Jieta's argument, but neither it nor Leavitt considered the specific legal issue presented here. Knutson, Irby, and Moore are of limited assistance on the narrow legal question before us.[32]

The State also contends that, even if court mismanagement can qualify as government misconduct under CrRLJ 8.3(b), the appropriate remedy was a new trial, and the district court abused its discretion by dismissing all charges. Its argument is inapposite under these circumstances. The State's premise is that a judge's legal error cannot be the basis for dismissal.[33] But the district court did not dismiss the charges against Jieta due to judicial error. The court dismissed the charges because administrative mismanagement by court personnel deprived Jieta of effective interpreter services and assistance of counsel. We are not convinced that judicial error can be a basis for dismissal under CrRLJ 8.3(b), but that issue is not before us.

CONCLUSION

On the narrow issue presented on discretionary review, we hold that "governmental misconduct" for purposes of CrRLJ 8.3(b) can extend to

---

[31] Id. at 372-73.

[32] In his briefing, Jieta also argues that State v. Starrish, 86 Wn.2d 200, 206, 544 P.2d 1 (1975), controls. But at oral argument, Jieta conceded the language he relied upon from Starrish was dicta. We agree.

[33] E.g., App. Br. at 12 ("There are numerous cases in which defendants were denied a fair trial by judges' violations of legal restrictions. The remedy has always been a new trial, not dismissal."), at 15 (CrRLJ 8.3(b) "does not, however, provide an additional remedy of dismissal for judicial error.").

mismanagement by court administration. We need not decide the exact types of court mismanagement that could warrant relief or when dismissal is an appropriate remedy for such mismanagement. On the record before us, the State does not establish that the trial court erred in its conclusion that CrRLJ 8.3(b) may extend to a court's administrative mismanagement of its statutory obligation to provide translator services.

Therefore, we affirm.

WE CONCUR: